**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENIS F. SHEILS, ON BEHALF OF** | : | |
| **HIMSELF AND ON BEHALF OF M.D.S.,** | : | |
| **A MINOR CHILD,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **NO. 14-2736** |
| **v.** | : | |
| | : | |
| | : | |
| **PENNSUBRY SCHOOL DISTRICT,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

Tucker, C.J.                                                 October \_\_\_, 2014

Presently before the Court are Defendant Pennsbury School District's Motion to Partially Dismiss Plaintiff's Amended Complaint (Doc. 23) and Plaintiff Denis F. Sheils's Response in Opposition thereto (Doc. 24). Upon consideration of the parties' submissions and for the reasons set forth below, Defendant's motion will be ***granted***.

## I.      FACTUAL BACKGROUND

Plaintiff Denis F. Sheils ("Mr. Sheils") brings the instant action on behalf of his minor child, M.D.S., a child with a disability. Mr. Sheils and M.D.S.'s mother, Ms. Sheils, are divorced, but share legal custody of M.D.S. and their other children. In March 2007, M.D.S. was evaluated for special education services and was classified as a student with a speech and language impairment prior to commencing kindergarten in the 2007-08 school year. He received an Individualized Education Program ("IEP") offering him related services and a one-on-one aide in a mainstream setting. In February 2012, M.D.S.'s IEP was revised to remove his one-on-one aide and reduce his related services.

1

Mr. Sheils alleges that on three occasions Ms. Sheils had M.D.S. examined by a developmental pediatrician, Dr. Mary Pipan, without Mr. Sheils's knowledge or consent. In a November 2011 report, Dr. Pipan suggested that M.D.S. was autistic and recommended that M.D.S. undergo an Autism Diagnostic Observation Schedule assessment. Mr. Sheils requested a second opinion and alleges that this request prompted Ms. Sheils to accuse him of child abuse. Mr. Sheils alleges that at Ms. Sheils's prompting, their youngest son informed the school guidance counselor that Mr. Sheils "slaps them [his children] at his house for misbehaving." Am. Compl. ¶ 22f. Consequently, Defendant Pennsbury School District ("School District") contacted social services to follow up on the child's report. Id. Thereafter, Mr. Sheils requested that the guidance counselor "no longer have any involvement with the children, including M.D.S." Id. at ¶ 22h.

In April 2013, the School District sought to perform various evaluations on M.D.S., including a Functional Behavioral Assessment ("FBA") and an Autism Spectrum Evaluation. Mr. Sheils objected to these assessments and claims that the School District agreed it would not conduct the assessments. However, Mr. Sheils states that the School District proceeded to perform a behavioral assessment despite his objections.

In June 2013, the School District convened an IEP meeting and in July 2013, all members of the IEP team agreed that M.D.S. would participate in co-taught inclusion classes for all academic subjects and spend 94% of the school day in the regular education classroom. M.D.S. began attending middle school in the 2013-2014 school year and is currently receiving services pursuant to the June 2013 IEP.

In December 2013, the School District convened another IEP meeting to discuss revisions to M.D.S.'s IEP. The December 2013 IEP noted that the parents would receive a

permission-to-evaluate form to grant the School District approval to conduct an FBA. The December 2013 IEP also recommended that M.D.S. receive mathematics, reading, and writing instruction in a resource room environment, which would reduce the amount of time he spent in regular education to 53% of the school day. Am. Compl. Ex. A, at 9. Ms. Sheils agreed to these changes, but Mr. Sheils objected and filed a request for a due process hearing on December 17, 2013. On December 20, 2013, the School District issued a Notice of Recommended Educational Placement in which M.D.S. was no longer mainstreamed. Mr. Sheils objected on that same day and filed another request for a due process hearing.

A due process hearing was held over several days in March 2014 and the Hearing Officer rendered his decision on April 23, 2014. The Hearing Officer ordered the School District to perform an FBA on M.D.S. in an educational setting. The Hearing Officer required the School District to select three independent evaluators and to send their curriculum vitae to Mr. Sheils so that he could select one evaluator to conduct the FBA. The Hearing Officer also ordered the School District to convene an IEP meeting following the FBA to consider the results of the FBA. Regarding M.D.S.'s program and placement, the Hearing Officer found that the least restrictive environment for M.D.S. to receive instruction is

> a split-program where the student receives some instruction in a resource room setting and some in an inclusive regular education classroom . . . . Instruction in reading and writing shall take place in a resource room setting. Instruction in mathematics shall take place in an inclusive regular education setting. Instruction and therapeutic techniques in speech and language shall take place where the student's IEP team determines this instruction would allow the student to gain meaningful education benefit from the instruction.

Am. Compl. Ex. A, at 15. Mr. Sheils alleges that he was denied due process at the impartial hearing and appeals the decision.

Mr. Sheils's Amended Complaint (Doc. 21) asserts the following eleven causes of action

against the School District: violations of the Individuals with Disabilities Education Improvement Act (Counts I and II);  violation of the Individuals with Disabilities Education Improvement Act and 42 U.S.C. § 1983 (Count III); violation of the Federal Rehabilitation Act of 1973 (Counts IV); violation of the Federal Rehabilitation Act of 1973 and 42 U.S.C. § 1983 (Count V); violation of Title II of the Americans with Disabilities Act (Count VI); violation of Title II of the Americans with Disabilities Act and 42 U.S.C. § 1983 (Count VII); violation of the First Amendment of the United States Constitution and 42 U.S.C. § 1983 (Count VIII); violation of due process and 42 U.S.C. § 1983 (Count IX); violation of equal protection of the law and 42 U.S.C. § 1983 (Count X); and conspiracy to violate 42 U.S.C. § 1983 (Count XI). In its Motion to Partially Dismiss Plaintiff's Amended Complaint (Doc. 23), the School District seeks to dismiss Mr. Sheils's Amended Complaint as to Counts III through XI, as well as his request for compensatory damages in his Prayer for Relief and his demand for a jury trial.

## II.        STANDARD OF REVIEW

A court may dismiss a plaintiff's complaint under Rule 12(b)(6) only when it does not state a claim for relief that is "plausible on its face." Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). All well-pleaded factual allegations contained in a plaintiff's complaint must be accepted as true and must be interpreted in the light most favorable to plaintiff. Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011). A complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is liable for the harm alleged. Santiago, 629 F.3d at 128.

To determine the sufficiency of a complaint, courts of the Third Circuit are required to perform a three-step analysis. Id. at 130. First, a court must identify plaintiff's claims and

determine the required elements of those claims. Id. Next, a court must identify, and strike, conclusory allegations contained in plaintiff's complaint. Id. Conclusory allegations are those that are no more than "an unadorned, the-defendant-unlawfully-harmed-me accusation, labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertion[s]." Argueta, 643 F.3d at 72 (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). Finally, a court must determine if the remaining factual allegations, "plausibly give rise to an entitlement for relief."  Id. at 73.

The focus of a court's inquiry into the sufficiency of a plaintiff's complaint is always plausibility of relief. Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). Plausibility does not require a plaintiff's complaint to demonstrate entitlement to relief is likely or probable. Argueta, 643 F.3d at 72.

A plaintiff's complaint must only plead facts sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element." McTernan v. City of York, Pa., 564 F.3d 636, 646 (3d Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." McTernan, 564 F.3d at 646 (citing Twombly, 550 U.S. at 555-56).

## III.   DISCUSSION

**A.  Count III (Individuals with Disabilities Education Improvement Act and 42 U.S.C. § 1983) and Count V (Rehabilitation Act and 42 U.S.C. § 1983)**

In Count III of his Amended Complaint, Mr. Sheils attempts to enforce the Individuals with Disabilities Education Improvement Act ("IDEIA")[1] by way of a 42 U.S.C. § 1983 action. For the following reasons, Mr. Sheils's claims in Count III of his Amended Complaint fail.

Section 1983 generally provides a remedy for a violation of a federal constitutional or statutory right. See Golden State Transit Corp. v. City of L.A., 493 U.S. 103, 105 (1989). However, Section 1983 does not provide a remedy for the violation of a federal statute where: (1) Congress has foreclosed enforcement of the statute in the statute's express language or (2) "the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983." S. Camden Citizens in Action v. New Jersey Dep't of Envtl. Prot., 274 F.3d 771, 779 (3d Cir. 2001) (quoting Wright v. City of Roanoke Redevelopment & Hous. Auth., 479 U.S. 418, 423 (1987)). Congress may foreclose a § 1983 remedy "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Blessing v. Freestone, 520 U.S. 329, 341 (1997).

The Third Circuit has explained that "[t]he IDEA includes a judicial remedy for violations of any right 'relating to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child." A.W. v. Jersey City Public Schools, 486 F.3d 791, 803 (3d Cir. 2007) (quoting 20 U.S.C. § 1415(b)6)). Given its comprehensive remedial scheme, the Third Circuit found that Congress did not intend § 1983 to be available to remedy violations of IDEIA-created rights. Id. Since Mr. Sheils cannot enforce

---

[1] The Individuals with Disabilities Education Act ("IDEA") was renamed to the IDEIA by amendment, effective July 1, 2005.  Pub. L. No. 108-446, § 1, 118 Stat. 2647 (2004).

his IDEIA claims through a Section 1983 action in this district, his claims under Count III must be dismissed.

Similarly, Mr. Sheils's claims in Count V of his Amended Complaint must be dismissed. Count V of the Amended Complaint attempts to enforce Section 504 of the Rehabilitation Act by way of a Section 1983 action. In A.W., 486 F.3d at 803-04, the Third Circuit reasoned that the Rehabilitation Act adopts the scheme of remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 to remedy alleged violations of Section 504. These "remedies for violations of Section 504 are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964." Id. Accordingly, the Third Circuit concluded that Congress incorporated a private judicial remedy for violations of the Rehabilitation Act and this remedy is intended to be exclusive. Id. at 805. As with IDEIA-created rights, the Third Circuit found that § 1983 is not available to remedy violations of rights under Section 504 of the Rehabilitation Act. As a result, Mr. Sheils cannot enforce his Section 504 claims through a Section 1983 action and his claims in Count V of his Amended Complaint are dismissed.

   **B. Count IV (Section 504 of the Rehabilitation Act) and Count VI (American with Disabilities Act)**

Count IV of the Amended Complaint alleges that the School District intentionally discriminated against Mr. Sheils and M.D.S. on the basis of a disability or acted with deliberate indifference in violation of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. Mr. Sheils seeks compensatory damages for the alleged violations. Count VI of the Amended Complaint contends that Mr. Sheils is entitled to compensatory damages under Title II of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*, for the School District's disability-based discrimination. Mr. Sheils asserts that he and M.D.S. "are being denied from

fully and equally enjoying the benefits of the services, programs and activities that defendant

School District provides. Defendant School District's policy, practices, customs and actions are

intentionally discriminatory . . . ." Am. Compl. ¶ 150.

Because the same standards govern Mr. Sheils's Rehabilitation Act and ADA claims, the

Court may address both Count IV and Count VI of the Amended Complaint in the same breath.

See McDonald v. Pennsylvania, 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the

Rehabilitation Act or under the Disabilities Act, the substantive standards for determining

liability are the same."). To establish a claim under both Acts, Mr. Sheils must demonstrate that

M.D.S.: (1) has a disability; (2) was otherwise qualified to participate in a school program; and

(3) was denied the benefits of the program or was otherwise subject to discrimination because of

his disability.[2] Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176,

189 (3d Cir. 2009). The School District and Mr. Sheils dispute the third element of this test.

To recover compensatory damages under Section 504 of the Rehabilitation Act and

Section 202 of the ADA, a plaintiff must show intentional discrimination. S.H. ex rel. Durrell v.

Lower Merion Sch. Dist., 729 F.3d 248, 262 (3d Cir. 2013). A deliberate indifference standard

satisfies that showing. Id. at 263. To establish deliberate indifference, a plaintiff must meet a

two-part standard, which requires: "(1) *knowledge* that a federally protected right is substantially

likely to be violated, and (2) *failure* to act despite that knowledge." Id. at 265.

Viewing the facts alleged in the Amended Complaint in the light most favorable to Mr.

Sheils, this Court finds that Mr. Sheils has failed to plead sufficient factual allegations to

demonstrate that the School District intentionally discriminated against M.D.S. in violation of

the Rehabilitation Act and the ADA. Mr. Sheils frames Counts IV and VI of his Amended

---

[2] The Rehabilitation Act requires the additional showing that program receives federal financial aid. 29 U.S.C. § 794(a). The parties do not dispute that this element applies to the School District.

Complaint nearly identically and his claims in both Counts are based on the same set of facts. The Court will now turn to the facts that Mr. Sheils offers to support his allegations of intentional discrimination or deliberate indifference.

Mr. Sheils argues that the School District refused to reasonably accommodate M.D.S. by failing "to consider bringing back a one-on-one so the child can remain mainstreamed . . . . ." Am. Compl. ¶ 53 Instead, the School District offered to instruct M.D.S. in a resource room setting for reading, writing, and mathematics while also maintaining his attendance in the regular classroom for 53% of the school day. Am. Compl. Ex. A, at 9. Additionally, Mr. Sheils alleges that M.D.S. has been subject to repeated observations and assessments without Mr. Sheils's knowledge or consent. Am. Compl. ¶¶ 28, 83, 86, 104.

These allegations do not give rise to an entitlement of relief. First, Mr. Sheils makes numerous conclusory statements about the deficiency of the IEP and services offered to M.D.S. that must be stricken. The remaining factual allegations fail to demonstrate how, if at all, the School District has acted with deliberate indifference to M.D.S.'s rights. Rather, the School District's efforts to evaluate and observe M.D.S. show that it did in fact act and attempted to meet M.D.S.'s needs, classify him appropriately, and provide him special education services and accommodations. Although the School District did not offer M.D.S. the one-on-one aide that Mr. Sheils requested, this omission does not constitute deliberate indifference. Given that Ms. Sheils raised questions about M.D.S.'s classification and the appropriateness of his special education program and placement, it is not surprising that the School District would seek to reopen M.D.S.'s case for further examination.

Next, Mr. Sheils alleges: "Defendant has *de facto* labeled M.D.S. as autistic." Pl.'s Resp. in Opp'n 6. To support this allegation, Mr. Sheils outlines, in detail, matters relating to his family

court disputes, claims he raised at the impartial due process hearing, concerns he had about the School District's assessments of M.D.S., and objections he raised relating to Dr. Pipan and her reports. See Am. Compl. ¶¶ 28, 30, 40, 83, 84, 87. However, the facts that Mr. Sheils relies on not only fail to show how M.D.S. has been *de facto* labeled autistic, but also how this alleged *de facto* autism labeling reflects or led to intentional discrimination by the School District.

The remaining allegations in Mr. Sheils's Amended Complaint are not only conclusory, but also speculative, and do not support his claims for intentional discrimination or deliberate indifference. Accordingly, these statements are not entitled to a presumption of truth and this Court will decline to entertain them. Mr. Sheils's claims in Count IV and VI of his Amended Complaint are dismissed.[3]

## C.  COUNT VII (ADA and 42 U.S.C. § 1983)

In Count VII of his Amended Complaint, Mr. Sheils seeks relief under Title II of the ADA through 42 U.S.C. § 1983. As discussed above, Section 1983 does not provide a remedy for violations of a federal statute where the statute has a comprehensive enforcement mechanism for protecting a federal right. See Blessing v. Freestone, 520 U.S. 329, 341 (1997).

The Third Circuit has not yet addressed whether the ADA's enforcement scheme is so comprehensive that it forecloses a remedy under Section 1983. The Courts in this district are divided on the issue. Compare Lee v. Se. Pa. Transp. Auth., 418 F. Supp. 2d 675, 680 (E.D.Pa 2005) (permitting a plaintiff to amend her complaint to include a § 1983 claim that "seeks to vindicate rights under the ADA"), with Wesley v. Vaughn, No. 99-1228, WL 210285, at *4 (E.D.Pa. Feb. 28, 2001) (concluding "that plaintiffs may not bring § 1983 actions for violations of the ADA"). The School District urges the Court to adopt the position that the ADA's

---

[3] Mr. Sheils asserts a claim for retaliation in Counts IV and VI for the first time in his Response in Opposition. The Court will limit its review to Plaintiff's claims raised in the Amended Complaint.

enforcement scheme precludes litigants from seeking remedies under § 1983. Mr. Sheils argues that the School District bears the burden of showing that Congress intended to foreclose such private enforcement. This Court lacks a proper foundation to conclude that Congress has foreclosed the use of § 1983 to enforce rights under the ADA. E.g., Mercer v. Se. Pa. Transit Auth., No. 12-6929, 2014 WL 2767340, at *12 (E.D.Pa. June 18, 2014) (concluding that this matter is unresolved in the Third Circuit).

Regardless which approach is applied, however, Mr. Sheils cannot succeed on his claims in Count VII. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives another of rights secured by the Constitution or federal statute. Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997). Mr. Sheils's constitutional claims under § 1983 are substantively the same as his ADA claims in Count VI of his Amended Complaint. As previously discussed, Mr. Sheils has failed to state facts sufficient to support his allegations that the School District discriminated against M.D.S. in violation of the ADA. Mr. Sheils's § 1983 claims premised upon his ADA claims cannot be viable where the underlying claims fail. Accordingly, Count VII of Mr. Sheils's Amended Complaint is dismissed.

### D.  COUNT VIII (First Amendment and 42 U.S.C. § 1983)

Count VIII of Mr. Sheils's Amended Complaint alleges that the School District deprived him of his First Amendment right to free speech in violation of 42 U.S.C. § 1983. "The First Amendment right to free speech includes the right to be free from retaliation by a public official for the exercise of that right." Hesling v. Avon Sch. Dist., 428 F. Supp. 2d 262, 270 (E.D.Pa. 2006). To establish a claim that a public official has retaliated against a private citizen in violation of the First Amendment, a plaintiff must demonstrate that: "(1) the private citizen engaged in protected conduct or speech; (2) the public official took adverse action against the

citizen; and (3) the adverse action was prompted or caused by the citizen's exercise of First Amendment rights." Id. Adverse action is defined as conduct "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Id. (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).

Mr. Sheils satisfies the first prong of this test, that his filing of a due process complaint and his advocacy on behalf of M.D.S., a student with a disability in the School District's special education program, is a matter of public concern protected by the First Amendment. See Hesling, 428 F. Supp. 2d at 270 (explaining that a parent's "invocation of IDEA due process proceedings for her children, if not her legal advocacy more generally, constituted a protected activity"). However, this Court is not convinced that Mr. Sheils has satisfied the second and third prongs of this test, that a public official took adverse action against him and that those actions can be causally linked to his advocacy.

Mr. Sheils alleges: "The intentional policy, practices, customs and actions of defendant School District have unlawfully chilled the exercise of plaintiff's free speech, for himself and as an advocate for M.D.S." Am. Compl. ¶ 164. However, Mr. Sheils fails to identify any of the School District's policies or practices, much less any retaliatory policy or practice. He has not offered any examples of instances where the School District chilled his protected speech. Instead, he offers several legal conclusions that are not entitled to the assumption of truth, as well as speculative statements that fail to plausibly give rise to an entitlement to relief.

Mr. Sheils argues that he was denied any meaningful participation in the December 2013 IEP. Pl.'s Resp. in Opp'n 10. However, he pleads no factual allegations to that effect. On the contrary, he has outlined the various objections that he raised at the December 2013 IEP meeting, which shows that he was afforded an opportunity to meaningfully participate in the IEP.

Am. Compl. ¶¶ 34 – 36. Moreover, the December 2013 IEP contained parental concerns he raised prior to or at the IEP meeting. Am. Compl. Ex. A, at 8.

Mr. Sheils contends that he "has been unlawfully enjoined to contact and discuss the matter with the evaluator of the FBA, prior to any evaluation being done and does not guaranty that plaintiff will be able to speak with the evaluator even after the evaluation is completed." Pl.'s Resp. in Opp'n 11. He does not cite to any source indicating that he has a legal right to contact evaluators before or after assessments are completed; this statement also is a legal conclusion. Moreover, the fact that Mr. Sheils was not permitted to contact the evaluator is consistent with the Hearing Officer's intention to order an "Independent Functional Behavior Assessment" in which "the scope, details, findings and recommendations of the independent FBA shall be determined solely by the evaluator." Am. Compl. Ex. A, at 16-17.

Mr. Sheils alleges that a guidance counselor at the School District falsely reported him for child abuse in retaliation. Pl.'s Resp. in Opp'n 11. However, Mr. Sheils's very pleadings provide the reasons why the guidance counselor may have reported possible child abuse: "school just contacted social services because his brother reported to school guidance counselor that dad slaps them at his house for misbehaving." Am. Compl. ¶ 22(i)(f). Consequently, this Court does not find that the report of child abuse constituted an adverse action causally linked to Mr. Sheils's advocacy efforts.

Mr. Sheils also states: "In the proceedings under Pennsylvania's Right to Know Law, defendant has retaliated against defendant [sic] by submitting affidavits falsely stating that during the confidential due process hearing, Cheryl Morett and other district employees have been subject to unfounded and personal attacks by plaintiff." Pl's Resp. in Opp'n 11-12. However, as Mr. Sheils also noted, Cheryl Morett ("Ms. Morett") submitted her affidavit in

response to Mr. Sheils's request for the release of Ms. Morett's and other school officials' home and mailing addresses. Am. Compl. ¶ 75. This Court, therefore, does not find any causal link between Mr. Sheils's protected speech and Ms. Morett's affidavit.

Mr. Sheils's claims in Count VIII of his Amended Complaint must fail, as he has not demonstrated that the School District or any official from the School District took adverse action against him, which was causally linked to the exercise of his First Amendment rights.

### E. Count IX (Due Process and 42 U.S.C. § 1983)

Count IX of the Amended Complaint alleges that the School District deprived Mr. Sheils and M.D.S. "of their liberty interest without due process of law in violation of the Fourteenth Amendment" and 42 U.S.C. § 1983. Am. Compl. ¶ 169. Here, Mr. Sheils makes a substantive due process claim. To make a substantive due process claim, a plaintiff must prove: (1) a defendant acted under color of state law; (2) the interest at issue is protected by the due process clause; and (3) the state actor's deprivation shocks the conscience. Chambers, 587 F.3d at 176. A court must determine what level of conduct is egregious enough to amount to a constitutional violation since the nature of conduct that is sufficiently egregious to shock the conscience varies depending on the context. Id. a t190.

Mr. Sheils meets the first element, that Defendant School District acted under color of state law. See, e.g., Spirk v. Centennial Sch. Dist., No. 04-4821, 2005 WL 433321, at *5 (E.D.Pa. Feb. 22, 2005) (finding school districts constitute state actors for the purpose of 1983 actions). Mr. Sheils also satisfies the second element since the Due Process Clause of the Fourteenth Amendment protects parents' fundamental rights "to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 66 (2000); see also

Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health, 503 F.3d 256, 266 (3d Cir. 2007).

However, Mr. Sheils fails to show that the School District's conduct was so egregious that it "shocks the conscience" as is required by the third prong of this test. Parents' liberty interest to care for and guide their children is not absolute. Anspach, 503 F.3d at 261. A conflict with the parent's liberty interest will only be found "when there is some 'manipulative, coercive, or restraining conduct by the State.'" J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 650 F.3d 915, 934 (3d Cir. 2011) (quoting Anspach, 503 F.3d at 266). The threshold for finding a conflict between the school district's actions and the parent's liberty right "will not be as high when the school district's actions 'strike at the heart of parental decision-making authority on matters of the greatest importance.'" Id. (quoting C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 184 (3d Cir. 2005)). "Parents' liberty interest will only be implicated if the state's action 'deprived them of their right to make decisions concerning their child,' and not when the action merely 'complicated the making and implementation of those decisions.'" Id. (quoting C.N., 430 F.3d 184).

Mr. Sheils has not established that the School District manipulated, coerced, or restrained him. Before moving forward with any changes to M.D.S.'s program and placement, the School District gave Mr. Sheils notice, after which he challenged the School District's recommendations. Additionally, the School District requested parental consent before conducting an FBA and Mr. Sheils firmly objected. In fact, Mr. Sheils exercised his parental right to object to the proposed changes to M.D.S.'s program by filing for a due process impartial hearing. While Mr. Sheils may disagree with the School District's recommendations, he does not

present any evidence showing that the School District constrained or compelled any action on his part, which would impose on the exercise of his parental liberty rights.

Mr. Sheils complains that the School District's informal assessments of M.D.S. without his consent and its disregard for his request that the guidance counselor withdraw from M.D.S.'s case, "strike at the heart of parental decision-making authority on matters of the greatest importance." Pl.'s Resp. in Opp'n 12. Accepting Mr. Sheils's allegations as true, it does not necessarily follow, that the School District's alleged actions rise to the level of constitutional violations. The United States Supreme Court has extended constitutional protection to parental decisions concerning certain matters (see Troxel v. Granville, 530 U.S. 57 (2000) (visitation); Pierce v. Society of Sisters, 268 U.S. 510 (1925) (decision to enroll child in private, religious school rather than public school)), but the matters raised in Mr. Sheils's Amended Complaint are not of comparable gravity. Cf. C.N., 430 F.3d at 185 (holding that parents' decision-making authority was not violated by school district's request that students complete survey regarding students' personal lives, even where parental consent was not sought).

Thus, this Court must conclude that Mr. Sheils fails to allege a violation of a protected liberty interest. The School District's Motion to Dismiss Count IX of Mr. Sheils's Amended Complaint is therefore granted.

**F.  Count X (Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983)**

In Count X of his Amended Complaint, Mr. Sheils alleges that the School District, through its intentional policy, practices, customs and actions are depriving him and M.D.S. of their right to equal protection of the laws in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. Am. Compl. ¶ 174. The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the

equal protection of the laws." U.S. Const. amend. XIV, § 1. "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they received different treatment from that received by other individuals similarly situated." Chambers, 587 F.3d at 196 (quoting Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990)).

Here, Mr. Sheils has failed to allege facts that would entitle him to relief. Nowhere in his Amended Complaint does Mr. Sheils allege that M.D.S. received different treatment from that received by other similarly-situated students or even offer factual averments to support such an allegation. Only in his Response in Opposition does Mr. Sheils later claim that M.D.S. "was intentionally discriminated against and was treated differently from students without disabilities." Pl.'s Resp. in Opp'n 15. He does not identify other similarly-situated students who have been treated differently than M.D.S. or situations where the alleged discrimination occurred. Mr. Sheils directs the Court to statements in his Amended Complaint where he challenges the School District's recommendations for M.D.S.'s program, placement, and the FBA. However, none of these statements are sufficient to demonstrate that the School District discriminated against M.D.S. or treated him differently from other similarly-situated students. Mr. Sheils's allegation that the School District is depriving M.D.S. of his right to equal protection of the law is plainly an unfounded conclusory statement.

Next, Mr. Sheils alleges for the first time in his Response in Opposition that the School District discriminated against him "based upon his male gender" thereby denying him equal protection of the law. Pl.'s Resp. in Opp'n 15. The Court will construe Mr. Sheils's claim here as a claim for sex discrimination. To support this newly raised allegation, Mr. Sheils asserts that on several occasions the School District failed to honor his requests with respect to assessing

17

M.D.S. and documenting M.D.S.'s disability while seeming to honor the wishes of M.D.S.'s mother, Ms. Sheils. Ms. Sheils shares many of the same opinions as the School District concerning the appropriate program and placement of M.D.S. Additionally, Mr. Sheils offers as support for his allegation: "the IEP team consists of members of the female gender except for Plaintiff and the school principal." Am. Compl. ¶ 58.

The Court first notes that its review is limited to the Amended Complaint and does not include Plaintiff's subsequent responses. On that ground alone, Mr. Sheils's claim of sex discrimination, which is not included in the Amended Complaint fails. Further, the Court finds that even if Mr. Sheils properly included his allegations of sex discrimination in his Amended Complaint, his claim would still fail. None of the facts Mr. Sheils has proffered plausibly suggest that the School District discriminated against him on the basis of his sex. The fact that the School District has made several recommendations for M.D.S.'s program and placement, which Mr. Sheils disputes, but which Ms. Sheils adopts, simply reveals differences in opinion. These differences are insufficient to demonstrate that the School District has discriminated against Mr. Sheils based on sex. Additionally, although Mr. Sheils may prefer the IEP team to be comprised of more than two males, the Court is unaware of any requirement for the gender make-up of IEP teams. Moreover, Mr. Sheils fails to show how the gender make-up of an IEP team relates to his allegations of sex discrimination.

This Court finds that Mr. Sheils's claims in Count X of his Amended Complaint fall well short of proving that he or M.D.S. were denied equal protection of the law in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. Accordingly, Mr. Sheils's claims in Count X of his Amended Complaint are dismissed.

**G.  Count XI (Conspiracy and 42 U.S.C. § 1983)**

Count XI of the Amended Complaint alleges that Ms. Sheils, Dr. Pipan and Kids-First, Newtown, and others "entered into a combination, agreement, or understanding to intentionally violate Plaintiff's and the minor child, M.D.S.'[s] rights under the IDEIA, the Federal Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act and their constitutional rights protected under the First and Fourteenth Amendments." Am. Compl. ¶ 179. Mr. Sheils's states that this conspiracy violates 42 U.S.C. § 1983. Id. at ¶ 180.

To establish a conspiracy under § 1983, a "plaintiff must demonstrate (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Eichelman v. Lancaster Cty, 510 F. Supp. 2d 377, 392 (E.D.Pa. 2007). "A private individual can become a state actor for purposes of § 1983 conspiracy liability if he or she is a 'willful participant in joint activity with the state or its agents.'" Panayotides v. Rabenoid, 35 F. Supp. 2d 411, 419 (E.D.Pa. 1999) (quoting Dutton v. Buckingham Twp., No. 97-3354, 1997 WL 732856 (E.D.Pa. Nov. 13, 1997)). Additionally, the requisite state action can still be present even if the state actor is immune from suit. Id. at 419.

Conspiracy has been defined as "a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974). "The plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." Hammond v. Creative Fin. Planning Org., Inc., 800 F. Supp. 1244, 1249 (E.D.Pa. 1992). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy

and certain other actions of the alleged conspirators will be deemed sufficient." Outterbridge v. Pa. Dep't of Corr., No. 00-1541, 2000 WL 795874, at *3 (E.D.Pa. June 7, 2000).

Here, Mr. Sheils has sufficiently alleged state action. He names the School District as the sole Defendant in this matter, but alleges that private actors, Ms. Sheils, Dr. Pipan and Kids-First, Newtown, and others "entered into a combination, agreement, or understanding to intentionally violate" his and M.D.S.'s rights. Am. Compl. ¶ 179.

However, Mr. Sheils's allegation of conspiracy must be dismissed because he has not pleaded facts to show that a conspiracy to deprive his or M.D.S.'s civil rights existed. He does not show that the parties to the alleged conspiracy actually came to any agreement to violate his or M.D.S.'s rights. He does not reference any conversations that would implicate a conspiracy. He does not show any acts in furtherance of a conspiracy. He has not discussed any chain of events that would resemble a conspiracy. Instead Mr. Sheils nakedly asserts purported violations such as the "School District unveiled its unlawful IEP that [it] had been plotting for months" Am. Compl. ¶ 33, and "the IEP is deficient and inappropriate since the School District is essentially conspiring with the child's mother and the physician . . . ." Id. at ¶ 55. These sort of statements are mere conclusory allegations of concerted action devoid of factual support establishing the existence of any agreement or furtherance of a conspiracy. To survive a motion to dismiss, Mr. Sheils cannot baldly claim that the School District's actions constituted a conspiracy, but must plead facts that plausibly give rise to an entitlement to relief.

Mr. Sheils attempts to argue in his Response in Opposition that the School District's customs and policies caused his alleged constitutional injuries. As discussed earlier, Mr. Sheils has not identified a single School District policy, practice, or custom in his Amended Complaint. Accordingly, this claim must also fail.

Mr. Sheils's claims in Count XI of his Amended Complaint are dismissed.

**H.  Claim for Compensatory Damages**

Mr. Sheils seeks an award of compensatory damages in his Prayer For Relief. The only claims remaining in the Amended Complaint are the claims in Counts I and II alleging violations of the IDEIA. The Third Circuit has held that compensatory damages are not an available remedy under the IDEIA. Chambers, 587 F.3d at 186. As such, Mr. Sheils's claim for compensatory damages in section (f) of the Prayer For Relief of his Amended Complaint must be denied.

**I.  Demand for a Jury Trial**

Mr. Sheils demands a jury trial. "The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, *enforceable in an action for damages* in the ordinary courts of law." Curtis v. Loetherm, 415 U.S. 189, 194 (1974) (emphasis added).

Mr. Sheils's only cognizable claims fall under the IDEIA, which is not a statute that is enforceable in an action for monetary damages. See Chambers, 587 F.3d at 184 – 186 (holding that "compensatory and punitive damages are not an available remedy under the IDEA" and that "Congress intended to ensure that disabled children receive a FAPE . . . not to create a mechanism for compensating disabled children and their families for their pain and suffering . . . ."). Consequently, Mr. Sheils's demand for a jury trial must fail.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant School District's Motion to Partially Dismiss Plaintiff's Amended Complaint will be granted with respect to Counts III through XI. Section 2(f) of the Prayer for Relief in Plaintiff Denis F. Sheils's Amended Complaint requesting an

award of compensatory damages is denied. Plaintiff's Jury Demand is also denied.

An appropriate order follows.