IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENIS F. SHEILS, ON BEHALF OF HIMSELF AND ON BEHALF OF M.D.S., A MINOR CHILD, | : <br> : <br> :    CIVIL ACTION <br> : <br> Plaintiff,    :    NO. 14-2736 <br> v.    : <br> : <br> PENNSBURY SCHOOL DISTRICT,    : <br> : <br> Defendant.    : |

## MEMORANDUM OPINION

Tucker, C.J.                                                                                         January 26, 2015

Presently before the Court is Plaintiff Denis F. Sheils's Application for Order to Show Cause Re: Entry of Stay Pending Appeal, Preliminary Injunction and Temporary Restraining Order (Doc. 2) and Defendant Pennsbury School District's Response in Opposition thereto (Doc. 7). Upon careful consideration of the parties' briefs, exhibits, the representations and presentations of counsel during the May 21, 2014 hearing, and all other papers and proceedings herein, and for the reasons set forth below, Plaintiff's Application will be *denied*.

## FACTUAL BACKGROUND

This Court has previously described the dispute between Plaintiff Denis F. Sheils and Defendant Pennsbury School District ("District") concerning the educational placement of Mr. Sheils's minor son, M.D.S. See Sheils v. Pennsbury Sch. Dist., No. 14-2736, 2014 WL 5038395 (E.D. Pa. Oct. 8, 2014). The Court will briefly review the facts and procedural history relevant to the legal issues in the instant action.

1

This matter arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and its implementing regulations, 34 C.F.R. § 300 et seq. Mr. Sheils and M.D.S.'s mother are divorced, but share legal custody of their children with Ms. Sheils having primary physical custody of M.D.S., a student with a disability. M.D.S. was evaluated for special education services and classified as a student with a speech and language impairment prior to commencing kindergarten in the 2007-08 school year. He received an Individualized Education Program ("IEP") offering him related services and a one-on-one aide in a mainstream setting.

In June 2013, the District convened an IEP meeting where all parties agreed that M.D.S. would participate in co-taught inclusion classes for all academic subjects and spend 94% of the school day in a regular education classroom. Soon after commencing middle school in the 2013-14 school year, M.D.S.'s teachers expressed concerns about his progress. Consequently, in December 2013, the District convened an IEP meeting and proposed revisions to M.D.S.'s IEP, which would offer M.D.S. mathematics, reading, and writing instruction in a resource room, thereby reducing the amount of time he spent in the regular education classroom. The District also recognized that M.D.S. was exhibiting behavioral problems and recommended a Functional Behavioral Assessment ("FBA") to assess and address his behavioral needs. While Ms. Sheils agreed to these recommendations, Mr. Sheils objected and he subsequently filed two due process complaints. See Def.'s Resp. to Pl.'s Application Ex. B, at 1413:11-14, 1414:3-11.

A due process hearing was held over five days in March 2014. The Hearing Officer rendered his decision on April 23, 2014 wherein he sustained Mr. Sheils's objections regarding mathematics instruction, but overruled Mr. Sheils's objections concerning the FBA and reading and writing instruction. Specifically, the Hearing Officer found that the least restrictive environment for M.D.S. to receive instruction was

> a split-program where the student receives some instruction in a resource room setting and some in an inclusive regular education classroom .... Instruction in reading and writing shall take place in a resource room setting. Instruction in mathematics shall take place in an inclusive regular education setting. Instruction and therapeutic techniques in speech and language shall take place where the student's IEP team determines this instruction would allow the student to gain meaningful education benefit from the instruction.

Sheils Decl. Ex. A, at 15. Additionally, the Hearing Officer ordered the District to conduct an FBA in the educational setting using an independent evaluator and to convene an IEP meeting following the FBA to consider the results. See id. at 15-18. Pursuant to the Hearing Officer's order, the implementation of the IEP with these changes would "not take place until the conclusion of 'the FBA IEP meeting.'" Id. at 16.

## PROCEDURAL HISTORY

On May 13, 2014, Mr. Sheils initiated the instant action in the Eastern District of Pennsylvania seeking a stay of the Hearing Officer's decision pursuant to 20 U.S.C. § 1415(j) of the IDEA and its corresponding implementing regulation, 34 C.F.R. § 300.518. Section 1415(j) is known as the IDEA's "stay-put" provision. Mr. Sheils wished to prevent the District from performing the FBA and implementing the revised IEP. Ms. Sheils, on the other hand, agreed with the Hearing Officer's decision, but was not a party to this action.

A hearing was held before this Court on May 21, 2014 and this Court subsequently denied Mr. Sheils's petition to stay implementation of the IEP and FBA. (See Doc. 9). Thereafter, Mr. Sheils filed a timely notice of appeal on May 30, 2014.

The United States Court of Appeals for the Third Circuit issued an Opinion on October 23, 2014 vacating this Court's Order for its failure to meet FED. R. CIV. P. 52(a)(2) requirements and remanding the matter for further proceedings. See Sheils v. Pennsbury Sch. Dist., No. 14-2883, 2014 WL 5368897 (3d Cir. Oct. 23, 2014). The Third Circuit stated, "[T]he District Court

should address the question of whether a single parent's consent to an IEP is sufficient to enable a school district to implement the IEP notwithstanding the other parent's objection." Id. at *2. The Third Circuit directed this Court to "resolve the dispute concerning one parent's right to invoke the 'stay put' provision over the other parent's objection" and to "decide whether the proposed FBA constitutes part of M.D.S.'s 'then-current educational placement' and is therefore encompassed by the 'stay put' provision." Id. at *2-3 (quoting M.R. v. Ridley Sch. Dist., 744 F.3d 112, 118 (3d Cir. 2014)). The Third Circuit granted Mr. Sheils's request for a stay, which will remain in effect until this Court issues an appropriate order granting or denying Mr. Sheils's request for a stay pursuant to § 1415(j). See id. at *1.

## APPLICABLE LEGAL STANDARDS

Mr. Sheils moves under the IDEA's stay-put provision as set forth in 20 U.S.C. § 1415(j) of the IDEA and its implementing regulation, 34 C.F.R. § 300.518. The stay-put provision of the IDEA mandates that "during the pendency of any proceedings conducted pursuant to this section, *unless the State or local educational agency and the parents otherwise agree*, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j) (emphasis added); see also 34 C.F.R. § 300.518. The stay-put provision, therefore, functions as an automatic preliminary injunction without regard for the traditional factors such as irreparable harm, likelihood of success on the merits, and a balance of hardships. See Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996) (citing Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982)). "Stay-put orders are designed to maintain the status quo during the course of proceedings." J.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 272 (3d Cir. 2002).

4

For purposes of the instant action, the Court must determine M.D.S.'s "current educational placement" pursuant to § 1415(j). Neither the IDEA nor its implementing regulations define "current educational placement." See Drinker, 78 F.3d at 865 n. 13. When determining a child's pendent or "then current-educational placement," courts look to the IEP in effect when the stay-put provision is invoked. See, e.g., id. at 867; Pardini v. Allegheny Intermediate Unit, 420 F.3d 181, 192 (3d Cir. 2005) ("[T]he plain meaning of 'current educational placement' refers to the 'operative placement actually functioning at the time the dispute first arises.'"). However, the pendent placement can be changed if there is an agreement between the parties during the proceedings; consequently, this new placement will supersede the previous placement. See 20 U.S.C. § 1415(j); see also Susqenita Sch. Dist. v. Raelee S., 96 F.3d 78, 84 (3d Cir. 1996); M.R., 744 F.3d at 118-19. "[A] decision favorable to the parents during the administrative review process 'must be treated as an agreement between the State and the parents.'" M.R., 744 F.3d at 119 (citing 34 C.F.R. § 300.518(d) and Sch. Comm. of the Town of Burlington v. Dep't of Educ., 471 U.S. 359, 372 (1985)).

## DISCUSSION

Mr. Sheils claims that M.D.S.'s placement prior to the Hearing Officer's decision is M.D.S.'s current educational placement. The District argues, however, that the appropriate pendent placement for M.D.S. is the one agreed to by the Hearing Officer and Ms. Sheils.

### A. Pendent placement when one parent agrees with the Hearing Officer

Parents often invoke pendency to maintain their child's then-current educational placement and prevent the school district from unilaterally changing the child's educational program. This case is a matter of first impression, however, and differs in several regards. Firstly, only one parent, Mr. Sheils, seeks to invoke pendency to maintain M.D.S.'s educational

program as mandated prior to the Hearing Officer's April 23, 2014 decision while Ms. Sheils advocates for change. Secondly, the District contends that M.D.S.'s pendent or current educational placement is the one that the Hearing Officer determined to be appropriate in his April 23, 2014 decision.

Both Mr. Sheils and the District rely on 34 C.F.R. § 300.518(d) to support their arguments. Section 300.518(d) states:

> If the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal *agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents* for purposes of paragraph (a) of this section.

34 C.F.R. § 300.518(d) (emphasis added). Mr. Sheils claims that the stay-put rule can only be overridden if the Hearing Officer and *both parents* agree to a new placement. See Pl.'s Mem. of Law in Supp. of His Application at 5. Mr. Sheils reads the reference to "parents" in 20 U.S.C. § 1415(j) and 34 C.F.R. § 300.518(d) as requiring the consent of both parents such that if one parent disagrees with and appeals the Hearing Officer's decision, the child's pendent placement would not be altered. The District contends that only one parent and the Hearing Officer are needed for there to be an agreement to make the change in placement operative, thus becoming the new pendent placement for the remainder of the proceedings.

Determining whether one parent's agreement with the Hearing Officer suffices to make the Hearing Officer's ordered placement M.D.S.'s pendent or current educational placement requires the Court to interpret the statute and its regulations. The Court's role "is to give effect to Congress's intent" and to "consider the 'overall object and policy of the statute, and avoid constructions that produce odd or absurd results or that are inconsistent with common sense.'"

Long v. Tommy Hilfiger U.S.A., Inc., 671 F.3d 371, 374-75 (3d Cir. 2012) (quoting Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199, 210 (3d. Cir. 2008)).

By incorporating the stay-put provision in the IDEA, Congress aimed to protect parents and their children with disabilities and to "strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students . . . from school." Honig v. Doe, 484 U.S. 305, 323 (1988). This view was also articulated in Burlington:

> We think at least one purpose . . . was to prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings. . . . [T]he impetus of the Act came from two federal-court decisions, Pennsylvania Assn. for Retarded Children v. Commonwealth, 334 F. Supp. 1257 (E.D. Pa. 1971), and 343 F. Supp. 279 (1972), and Mills v. Board of Education of District of Columbia, 348 F. Supp. 866 (D.C. 1972), which arose from the efforts of parents of handicapped children to prevent the exclusion or expulsion of their children from the public schools. Congress was concerned about the apparently widespread practice of relegating handicapped children to private institutions or warehousing them in special classes. See § 1400(b)(4); 34 CFR § 300.347(a) (1984).

471 U.S. at 373. Accordingly, the stay-put provision of the IDEA was included for the security of students with disabilities and their parents to ensure that students with disabilities receive free appropriate public education ("FAPE") services throughout the pendency of any proceedings.

Contrary to Mr. Sheils's position, the pendency provision of the IDEA was not intended to hinder a change in placement when a parent agrees with the Hearing Officer and district that the change is appropriate. The pendency provision enables parents to file their grievances without fear that their children will be expelled or relegated to an inappropriate educational program. Here, Mr. Sheils filed his due process complaint and the Hearing Officer found partially in his favor and partially in favor of the District. Because Mr. Sheils is displeased with the Hearing Officer's decision, he now attempts to obstruct the implementation of that decision by misconstruing § 300.518. However, the Court rejects Mr. Sheils's interpretation of the statute

7

and its regulations. The District has not acted unilaterally. M.D.S. is not excluded from the regular education program. Instead, the Hearing Officer determined that "a split-program where the student receives some instruction in a resource room setting and some in an inclusive regular education classroom," as well as an FBA would be appropriate. Sheils Decl. Ex. A, at 15-18. Ms. Sheils concurred. See Hr'g Tr. 90:15 – 91:24, May 21, 2014. After carefully reviewing the purpose of the IDEA's stay-put provision, this Court concludes that Congress did not intend the pendency provision of the IDEA to be construed as Mr. Sheils attempts to do here.

A review of the IDEA's implementing regulations further confirms the Court's conclusion. The United States Department of Education's Office of Special Education and Rehabilitative Services ("OSERS")[1] issued an Analysis of Comments and Changes accompanying the revised regulations. Courts "give substantial deference to a federal agency's interpretation of its own regulations." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) ("[T]he agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation."); see also Stinson v. U.S., 508 U.S. 36, 43-45 (1993) (deferring to an agency's interpretive commentaries); Michael C. v. Radnor Twp. Sch. Dist., 202 F.3d 642, 653 (3d Cir. 2000) (deferring to an agency's interpretation in an Office of Special Education Programs ("OSEP")[2] Policy letter).

These Comments clarify the present dispute regarding whether one parent can invoke the IDEA's stay-put provision: ". . . § 300.518 provide[s] that during the pendency of any administrative or judicial proceeding regarding a due process complaint . . . unless the *parent* and the SEA or LEA agree to a proposed change in the educational placement of the child, the child

---

[1] OSERS is the agency within the U.S. Department of Education responsible for implementing and administering the IDEA.
[2] One program component of OSERS is OSEP, which more directly provides leadership and support to states and local school districts on matters pertaining to the IDEA.

remains in the current educational placement." Child's Status During Proceedings, 71 Fed. Reg. 46710 (Aug. 14, 2006) (emphasis added). The Comments continue:

> "[w]hen a hearing officer's decision is in agreement with *the parent* that a change in placement is appropriate, that decision constitutes an agreement by the State agency and *the parent* for purposes of determining the child's current placement during subsequent appeals. See, e.g., Burlington School Committee v. Dept. of Educ., 471 U.S. 359, 372 (1985); Susquenita School District v. Ralee S., 96 F.3d 78, 84 (3rd Cir. 1996); Clovis Unified Sch. Dist. v. Cal. Office of Administrative Hearings, 903 F.2d 635, 641 (9th Cir. 1990).

Id. (emphasis added).

The Court recognizes that OSERS's Comments did not explicitly address the present dispute concerning one parent's invocation of pendency over the other parent's objection. However, throughout OSERS's analysis of § 300.518(d), it repeatedly refers to an agreement between the public agency or hearing officer and *the parent*, which leads the Court to conclude that one parent's consent to changes in the student's placement suffices to form a valid agreement. Although § 300.518(d) references parents, it is clear to the Court that in OSERS's comments and analysis of this section of the IDEA's implementing regulations, OSERS contemplated that only one parent would be necessary to approve a change in placement for the purpose of pendency.

Additionally, the Court notes that adopting Mr. Sheils's interpretation of § 300.518(d) could result in potential negative and unacceptable consequences for parents invoking the IDEA's stay-put provision. For example, in M.R., the parents of a student with a disability brought an action against a school district to recover tuition costs for a private school where they had placed their daughter pending final disposition of their prior action alleging that the school district failed to offer the student a FAPE. 744 F.3d 112. The Third Circuit held that the school district was responsible for the costs of the private school notwithstanding the district court's

9

reversal of the hearing officer's decision in favor of the parents in the prior action. Id. at 128. Given Mr. Sheils's construction, if one of the parents in M.R. disagreed with the hearing officer's placement assessment, then the pendent placement for the child would have been the previous public school program. Consequently, the parents would have been responsible for funding the entirety of the child's private school placement throughout the proceedings, which spanned several years. Placing this financial burden on parents who seek an appropriate education for their children even after a hearing officer renders a favorable decision would be absurd and potentially unconscionable. A parent would be required to return his or her child to a placement that both the parent and a hearing officer deemed inappropriate or assume financial risk for a placement that offers their child a FAPE, which, in the first instance, the school district is obligated to provide. For some parents, this could result in having no choice at all, as they may be unable to afford the new placement; this would essentially amount to a unilateral change in placement. Cf. Burlington, 471 U.S. at 372 (arguing that if reimbursement was unavailable to parents, the principal purpose of the IDEA would be defeated, as parents would be forced to leave their child in "an inappropriate educational placement or to obtain the appropriate placement only by sacrificing any claim for reimbursement."); Drinker, 78 F.3d at 865 ("To cut off public funds would amount to a unilateral change in placement, prohibited by the Act."). Indeed, in M.R. the Third Circuit declared, "We cannot conclude that Congress intended a placement based on an agreement with 'the State or local educational agency' to be less secure than one based on an IEP." 744 F.3d at 124 (quoting 20 U.S.C. § 1415(j)). The IDEA was intended to give students with disabilities both an appropriate education and a free one. See Burlington, 471 U.S. at 372. Mr. Sheils's construction could possibly defeat one of those objectives.

Although the instant matter does not pertain to private school reimbursement, the rationale underlying the Third Circuit's reasoning in M.R. applies here. The risks to M.D.S. in keeping him in what the Hearing Officer has deemed an inappropriate placement are the same. Here, both Ms. Sheils and the Hearing Officer agree that the appropriate placement for M.D.S. would be a split-program where he could receive instruction in both a regular education classroom and a resource room. Accordingly, the requirements of 34 C.F.R. § 300.518(d) have been satisfied, and the change in placement ordered by the Hearing Officer "must be treated as an agreement between the State and the parents. . ." and, ultimately, M.D.S.'s pendent placement.

For the foregoing reasons, the Court concludes that M.D.S.'s current educational placement is that which the Hearing Officer ordered in his April 23, 2014 Order. The Court denies Mr. Sheils's Application for Stay with respect to the Hearing Officer's order concerning M.D.S.'s change in placement.

### B. The FBA is not subject to the Stay-Put Provision of the IDEA

In his Application, Mr. Sheils also requests that this Court stay the FBA pursuant to 20 U.S.C. § 1415(j) and its implementing regulation, 34 C.F.R. § 300.518. The District counters that Mr. Sheils's request does not comport with the language of the stay-put provision, which only refers to changes in educational placements, not assessments like an FBA. See Def.'s Resp. to Pl.'s Application at 5. The Court agrees with the District.

School districts must "consider the use of positive behavioral interventions and supports, and other strategies, to address" the behavioral needs of a child whose behavior impedes their learning. 34 C.F.R. § 300.324(a)(2)(i). The IDEA only requires an FBA "when a child has been identified with a disability and has an IEP in place, yet still displays behavioral problems." D.K.

v. Abington Sch. Dist., No. 08-cv-4914, 2010 WL 1223596, at *9 (E.D. Pa. Mar. 25, 2010) (citing 20 U.S.C. § 1415(k)(1)(D)). An FBA is considered an educational evaluation under the IDEA. See, e.g., H.D. v. Cent. Bucks Sch. Dist., 902 F. Supp. 2d 614, 627 (E.D. Pa. 2012) (finding that a school-conducted FBA satisfied the requirements of an educational evaluation pursuant to 20 U.S.C. § 1414(b)).

An FBA would not constitute part of M.D.S.'s pendent placement, as it is an evaluation used to assess the child's behavioral needs and determine the appropriate measures to address those needs. See id. The stay-put provision only applies "to attempts to alter a student's current educational placement 'during the pendency of any proceedings conducted pursuant to *this section.*'" Michael C., 202 F.3d at 653 (quoting 20 U.S.C. § 1415(j)). Accordingly, § 1415(j) does not govern FBAs.

For these reasons, the Court denies Mr. Sheils's Application for Stay as to the Hearing Officer's order regarding the completion of an FBA.

## CONCLUSION

For the reasons set forth above, Plaintiff Denis F. Sheils's Application for Order to Show Cause Re: Entry of Stay Pending Appeal, Preliminary Injunction and Temporary Restraining Order is denied.

An appropriate Order follows.

12